UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRAVIS DALE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VULCAN METALS CORPORATION, a Delaware corporation,<br><br>Defendant. | Case No. 3:25-cv-05803-TMC<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND |

## I.    INTRODUCTION

In this putative class action, plaintiff Travis Dale alleges that Defendant Vulcan Metals Corporation violated Washington law by failing to pay its employees their required wages and denying them meal and rest breaks. Before the Court is Dale's motion to remand the case to state court. Dkt. 19. Because Vulcan has failed to show that this Court has jurisdiction under either traditional diversity jurisdiction or the Class Action Fairness Act (CAFA), Dale's motion is GRANTED and this case is REMANDED to Pierce County Superior Court.

## II.    BACKGROUND

Dale filed a class action complaint in Pierce County Superior Court on July 25, 2025. Dkt. 1-2 at 2. Dale alleges that Vulcan violated Washington wage and hour laws when it

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND - 1

"engaged in a common course of" failing to pay minimum wages, pay overtime wages, provide meal breaks, provide rest breaks, and pay unpaid wages upon termination. *Id.* at 7–9.

Vulcan removed the case to federal court, claiming that this Court has subject matter jurisdiction under both traditional diversity jurisdiction, 28 U.S.C. § 1332(a), and CAFA, 28 U.S.C. § 1332(d). *Id.* at 1–2. Dale moved to remand, arguing that Vulcan cannot satisfy the amount in controversy requirement under either standard. Dkt. 19.

### III.    LEGAL STANDARDS

Traditional diversity jurisdiction has two requirements. 28 U.S.C. § 1332(a). The first is "complete diversity, meaning that each plaintiff must be of a different citizenship from each defendant." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). Second, the amount in controversy must exceed $75,000. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (citing 28 U.S.C. § 1332). On a motion to remand, the removing defendant faces a strong presumption against removal and bears the burden of establishing that removal was proper. *Gaus v. Miles. Inc.,* 980 F.2d 564, 566 (9th Cir. 1992); *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) ("[B]ecause we presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record, the party asserting federal jurisdiction when it is challenged has the burden of establishing it.") (citation modified).

"CAFA gives federal courts jurisdiction over certain class actions" and jurisdiction under CAFA has three requirements. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B)). First, the class must have more than 100 members. *Id.* Second, the parties must be minimally diverse. *Id.* Third, the amount in controversy must exceed $5 million. *Id.* at 85. Unlike traditional diversity jurisdiction, there is "no antiremoval presumption" in "cases invoking CAFA" jurisdiction." *Id.* at 89. On a motion to

remand, the defendant must establish, "by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 88 (quoting 28 U.S.C. § 1446(c)(2)(B)).

### IV.    DISCUSSION

In its notice of removal, Vulcan claimed that this Court has traditional diversity jurisdiction, 28 U.S.C. § 1332(a), and CAFA jurisdiction, 28 U.S.C. § 1332(d). Dkt. 1 at 1–2. In Dale's motion to remand, he argues that the Court has neither.

The parties do not dispute that there is diversity of citizenship. Vulcan is a Delaware corporation, and Dale is a citizen of Washington. Dkt. 1 at 5–6 (citing Dkt. 3 ¶ 11). Nor is there any dispute that there are more than 100 potential class members, as required for CAFA jurisdiction. The parties agree that there are around 286. Dkt. 22 at 6; Dkt. 3 ¶ 12. All that remains in dispute is whether the required amounts in controversy are met for either traditional diversity or CAFA jurisdiction.

### A.    28 U.S.C. § 1332(a): Traditional Diversity Jurisdiction

Vulcan claims that traditional diversity jurisdiction exists because Dale's individual damages and attorney's fees would easily exceed the required $75,000 under 28 U.S.C. § 1332(a). Dkt. 1 ¶ 18. Vulcan's calculation relies on several assumptions about Dale's claims. First, that Dale worked for 320 days with an average hourly pay of $28.68. *Id.* ¶ 28. Second, he was denied *every* possible rest period, amounting to $4,588.80 in damages. *Id.* Third, he was denied *every* possible meal period, which would add an additional $6,883.20 in damages. *Id.* Fourth, *every* alleged violation by Vulcan was willful, providing double damages as exemplary damages, adding $22,944.00, and totaling $34,416. *Id.* ¶ 29. Fifth, Dale is likely to obtain more than the remaining $40,584.00 necessary to meet the amount in controversy through attorney's fees, because his counsel was recently awarded significantly more than that in a class action that

settled before trial. *Id.* ¶ 32 (citing *Blount v. Host Healthcare, Inc.*, No. 21-CV-310-MMA (WVG), 2022 WL 1094616, at *12 (S.D. Cal. Apr. 12, 2022)).

Dale's motion to remand makes two arguments as to why there is no traditional diversity jurisdiction. Dkt. 22 at 2. First, Vulcan's calculation assumes Dale is contending that during his employment, the Washington wage and hour laws were violated 100% of the time, which is "unreasonable and unsupported" by the complaint. *Id.* at 6. Second, Vulcan's calculation of attorney's fees attributable to Dale is improper under the Ninth Circuit's anti-aggregation rule, because only Dale's pro rata share would be attributable to him in a class action. *Id.* 2–3.

Dale has the better argument. Vulcan has not met the amount in controversy requirement for traditional diversity jurisdiction because the complaint cannot reasonably be read to allege that Vulcan *never* complied with Washington wage and hour laws during Dale's employment.

In the complaint, Dale alleges that Vulcan "engaged in a common course of conduct" of failing to pay minimum wages by automatically deducting 30-minute increments from time records (ostensibly for meal breaks) without always providing the required breaks. Dkt. 1-2 ¶¶ 5.1–5.4. To the extent this time-editing practice removed hours worked beyond 40, it also caused unpaid overtime. *Id.* ¶ 5.7. Vulcan "engaged in a common course of conduct" of failing to provide a 30-minute meal break for every five hours worked, as Dale "often worked straight through his shifts without thirty minute meal breaks." *Id.* ¶ 5.12. Vulcan "engaged in a common course of conduct" of failing to provide rest breaks, as Dale could not take 10-minute rest breaks "[o]n numerous occasions." *Id.* ¶ 5.19. Lastly, Vulcan "engaged in a common course of conduct" of failing to keep accurate wage statements for Dale. *Id.* ¶ 5.21.

Dale's complaint is somewhat vague, but words and phrases like "common course," "often," and "numerous occasion" do not imply that Vulcan *always* violated the Washington wage and hour laws. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015)

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND - 4

(a complaint alleging a "pattern and practice" of labor law violations did not necessarily imply the pattern and practice was universally followed every time the wage and hour violation could arise). Assumptions about the amount in controversy may be reasonable if they are "founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019). A reasonable reading of the allegations in Dale's complaint would allow for an amount in controversy based on a 20% violation rate, totaling individual damages of $6,883.20. "Courts in the Ninth Circuit have repeatedly approved of an assumed 20% violation rate for meal and rest period claims where, as here, the plaintiff alleges a 'policy and practice' of violations." *Arnold v. Marriott Int'l*, No. 3:24-CV-00221-RAJ, 2025 WL 1919260, at *4 (W.D. Wash. July 11, 2025) (collecting cases); *Ramirez v. Cornerstone Bldg. Brands*, No. 2:21-cv-01017-MCE-JDP, 2022 WL 1556664, at *1 (E.D. Cal. May 17, 2022) (20% violation rate was reasonable where complaint alleged violations occurring "often" or "from time to time" as well as violations resulting from "company-wide policies and procedures"). But Vulcan has not shown any basis for an assumed violation rate of 100%, or anything close to it.

Additionally, under the anti-aggregation rule, the Court may only consider Dale's pro rata share of attorney's fees when calculating the amount in controversy for a putative class action under traditional (not CAFA) diversity jurisdiction. "The federal courts have long accepted the general rule that multiple plaintiffs who join together in a single lawsuit to enforce their rights as individuals may not aggregate their claims to satisfy a jurisdictional threshold for the amount in controversy." *Pagel v. Dairy Farmers of Am., Inc.*, 986 F. Supp. 2d 1151, 1155 (C.D. Cal. 2013). "The anti-aggregation rule applies to class actions removed on the basis of diversity under 28 U.S.C. § 1332(a), meaning that the separate claims of putative class members cannot be aggregated to meet the threshold"; or in other words, "at least one named plaintiff must independently meet the $75,000 threshold." *Baum v. Platinum Nine Holdings, LLC*, No. 2:25-

CV-00671-TL, 2025 WL 3237500, at *3 (W.D. Wash. Nov. 20, 2025) (citing *Snyder v. Harris*, 394 U.S. 332, 335–36 (1969)).

In the case provided by Vulcan, *Blount v. Host Healthcare, Inc.*, Dale's counsel was awarded $195,000, after the court found their $500 hourly rate and "expenditure of 390 hours" reasonable on a wage and hour class action with 1,097 class members that settled before trial. No. 21-CV-310-MMA (WVG), 2022 WL 1094616, at *1, 10 (S.D. Cal. Apr. 12, 2022). Using the amount from *Blount*, divided by the 286 class members, Dale's individual share would be $679.44. Even if the Court borrowed Vulcan's assumption of a 100% violation rate, Vulcan would need Dale's pro rata share of attorney's fees to be at least $40,721 to meet the $75,000 individual threshold under traditional diversity jurisdiction. That number, multiplied by the 286 potential class members, Dkt. 3 ¶ 12, would make the total assumed attorney' fees for the putative class $11,646,206. Such an amount would be patently unreasonable.

Accordingly, Vulcan has failed to establish, by the preponderance of the evidence, that the amount in controversy is sufficient for traditional diversity jurisdiction. The Court will next consider jurisdiction under CAFA.

**B.    28 U.S.C. § 1332(d): CAFA Jurisdiction**

Vulcan claims that CAFA jurisdiction exists because the potential class's damages and attorney's fees would easily exceed the required $5,000,000. Dkt. 1 ¶ 35. Vulcan's calculation of the amount relies on a combination of evidence and assumed violation rates. First, there are 286 potential members of the class. Dkt. 3 ¶ 12. Second, the class members, collectively, worked 141,959 workdays at a median hourly rate of $30.43. Dkt. 1 ¶ 38 (citing Dkt. 3 ¶ 13); Dkt. 20 at 20. Third, Vulcan assumes the class contends they were denied *every* possible rest period, amounting to $2,241,641.17 in damages. Dkt. 20 at 20. Fourth, Vulcan assumes they were denied *every* possible meal period, which would add an additional $3,362,461.75 in damages. *Id.*

at 20–21. Fifth, Vulcan assumes *every* alleged violation was willful, adding $11,208,205.83 in exemplary damages, leading to a total of $16,812,308.74. *Id.* at 21. Fifth, Vulcan assumes Dale's counsel would be awarded 25% in attorneys' fees, adding another $4,203,077.18. *Id.*

In Dale's motion to remand, he argues that CAFA jurisdiction does not exist because, again, Vulcan's assumed 100% violation rate throughout the class period is "unreasonable and unsupported" by the complaint. Dkt. 22 at 6. This argument is persuasive in the CAFA context as well. "In determining the amount in controversy, courts first look to the complaint." *Ibarra*, 775 F.3d at 1197. "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Id.* Again, even if the allegations in Dale's complaint are vague, words and phrases like "common course," "often," and "numerous occasions" do not reasonably imply that Vulcan *always* violated the Washington wage and hour laws. *Id.* at 1199. A reasonable reading of the allegations in the complaint allows for a 20% violation rate, which would support assumed damages of only $3,362,461.75. *Ramirez*, 2022 WL 1556664, at *1.

Although the Ninth Circuit has declined to adopt a 25% per se rule on attorney's fees in class actions, courts in this district have assumed such an award is a reasonable estimate when plaintiffs do not provide an alternative. *Sumo v. PSL Assocs., LLC*, No. 25-5436-BHS, 2025 WL 2624531, at *3 (W.D. Wash. Sept. 11, 2025) (citing *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 928 (9th Cir. 2019)); *Copple v. Arthur J. Gallegher & Co.*, No. C22-0116-LK-SKV, 2022 WL 3357865, at *5 (W.D. Wash. Aug. 2, 2022). Without an alternative, the Court assumes a 25% potential fee award, which would be $840,615.43. This reasonable assumption of damages and attorney's fees would total $4,203,077.18—still short of the $5 million threshold for CAFA jurisdiction.

Vulcan asks the Court to adopt its 100% violation rate assumption, but "if a violation rate cannot be justified by the allegations in the compliant, it must be justified by something else." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025). That "something else" must be established by a preponderance of the evidence. *Id.* After reviewing the submitted declarations, the Court finds that Vulcan has not satisfied its burden of pointing to evidence that could support a 100% violation rate, or any assumption higher than 20%. Vulcan has therefore failed to establish that the amount in controversy is sufficient for CAFA jurisdiction.

## V.    CONCLUSION

For the reasons explained above, Dale's motion to remand is GRANTED. The Court ORDERS as follows:

1.  Pursuant to 28 U.S.C. § 1447(c), all claims brought by Dale are REMANDED to the Superior Court of Pierce County, Washington;

2.  Pursuant to 28 U.S.C. § 1447(c), the Clerk shall mail a certified copy of this Order to the Clerk for the Superior Court of Pierce County, Washington; and

3.  The Clerk shall transmit the record herein to the Clerk for the Superior Court of Pierce County, Washington.

4.  Following remand, the Clerk shall close the case.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 5th day of February, 2026.

Tiffany M. Cartwright
United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND - 8